■ MODI RUBBER LIMITED, Appellant, v SILCEMON FASHIONS, INC., Respondent.—Order of the Supreme Court, New York County (Myriam J. Altman, J.), entered August 2, 1988, which denied plaintiff's motion for summary judgment, unanimously reversed, on the law, the motion granted, the sixth counterclaim dismissed, and judgment is awarded in favor of plaintiff and against defendant in the amount of $173,567, with interest on the amount of $10,000 from March 20, 1987, $15,000 from April 20, 1987, $5,000 from January 15, 1987, $7,500 from February 15, 1987, $16,000 from March 15, 1987, $20,000 from April 15, 1987, $25,000 from May 15, 1987, $25,000 from June 15, 1987, $25,000 from July 15, 1987, and $25,067 from August 15, 1987, with costs.

Between July 1985 and February 1986, plaintiff sold to defendant certain goods for an agreed total price of $55,165. In January 1987, defendant delivered to plaintiff five post-dated checks totaling $55,165, the first two dated January 20, 1987, the third, fourth and fifth dated February 20, March 20, and April 20, 1987, respectively. Asserting that the checks were given as payment for the goods and that the last two checks were dishonored, plaintiff seeks to recover $25,000, the amount of the dishonored checks. Opposing a motion by plaintiff for summary judgment, defendant asserted that it had initially rejected the goods as overdue and poorly manu-factured, but eventually agreed in October 1986 to accept them on a consignment basis. The checks, according to defen-dant, were given not as payment, but as "security" for the goods so consigned, and were supposed to be returned to defendant as and when the consigned goods were returned to plaintiff. Although the consignment (which is not affirmatively pleaded in defendant's answer) presumably was to terminate on April 20, 1987, the date of the last check, defendant offered no proof that it undertook to return the goods to plaintiff at that or any later time. This failure on defendant's part to return the goods is so inconsistent with the claimed oral consignment as to make that claim appear to be nothing more than an afterthought, lacking in substance and interposed merely for the purpose of delay (see, Bangor Clothing Co. v Superior Sportswear Corp., 22 AD2d 864, affd 16 NY2d 1018). Thus, we find that the checks were given as payment for the goods, a finding that has additional support in the circum-stance that at the time the checks were given, in January 1987, the parties were then compromising a dispute concern-ing other goods sold to defendant by plaintiff.

Between August and November 1986, plaintiff sold to defen-dant additional goods for a total agreed-upon price of $190,067. According to plaintiff, defendant claimed that it was entitled to "chargebacks" of $62,000 because of poor workman-ship, which claim was compromised by the parties in Decem-ber 1986 when they agreed to chargebacks of $40,000 and thus a balance of $150,067. Two letters addressed to plaintiff, signed by defendant's president, and dated December 1986 and January 1987, clearly purport to memorialize this agreement. In addition, the letters set out a year-long payment schedule; the first payment of $1,500 came due in December 1986 and was timely made by defendant. In opposition to plaintiff's motion, defendant asserted that the letters in question were drafted by plaintiff's agents, who requested same from defen-

dant because required by plaintiff, an Indian corporation, in order to satisfy the Bank of India that plaintiff was in compliance with certain Indian foreign exchange regulations governing the extension of credit for exported goods. Defendant also pointed to handwritten insertions on its copy of one of the letters, assertedly made by plaintiff's agent, to the effect that the payment schedule was subject to further negotiation and that the indebtedness could be liquidated by the return of goods. Here again, however, defendant came forward with no proof of ever having returned goods to plaintiff, and its claim that it was entitled to do so is inconsistent with the payment it made of the first installment. And, if there be no reason to doubt that the letters evidencing the compromise were solicited by plaintiff, neither is there any reason to doubt that the compromise evidenced by the letters was in fact made, whatever might have been the varying motivations of the parties. The plain meaning of the letters cannot be so easily disregarded. By defendant's own account as set forth in its papers on the motion, the dispute between the parties concerning the quality of the goods shipped by plaintiff was, by December 1986, deep seated and long standing. In terms as clear as can be, defendant acknowledged this dispute and confirmed its settlement in the amount of $150,067. It cannot now be heard to argue that the letters do not mean what they say, and were given simply to "accommodate" plaintiff in its relationship with the Bank of India.

Except for the sixth counterclaim alleging that plaintiff fraudulently induced defendant to sign the two letters, which we dismiss, we make no findings of fact or law concerning defendant's other counterclaims, other than that they do not constitute defenses to plaintiff's causes of action on either the notes or the compromise. Concur—Kupferman, J. P., Carro, Asch, Wallach and Smith, JJ.